**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 12, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MARVIN B. DAVIS, Jr.,

        Petitioner – Appellant,

v.

RAY ROBERTS; STEVE KOBACH,

        Respondents – Appellees.

No. 14-3121
(D.C. No. 5:12-CV-03075-SAC)
(D. Kansas)

**ORDER DENYING**
**CERTIFICATE OF APPEALABILITY**[*]

Before **KELLY**, **ANDERSON**, and **BACHARACH**, Circuit Judges.

Marvin B. Davis, Jr., proceeding *pro se*, seeks a Certificate of
Appealability ("COA") in order to appeal the denial of his 28 U.S.C. § 2254
proceeding. Concluding that Mr. Davis has failed to establish entitlement to the
issuance of a COA, we deny him a COA and dismiss this matter.

---

[*]This order is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

Mr. Davis is no stranger to our court, having filed thirteen appeals in our court since 2000. And although Mr. Davis has accumulated three "strikes" under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(g), we have determined that the prepayment fee requirements of the PLRA do not apply to attempted habeas appeals such as this one. Jennings v. Natrona Cty Det. Ctr. Med. Facil., 175 F.3d 775, 780 (10th Cir. 1999).

Mr. Davis was convicted in Kansas state court in 1997 of aggravated burglary, aggravated kidnaping, domestic violence, and aggravated indecent liberties with a minor. He was sentenced to 230 months' imprisonment. As stated in one of the decisions resolving Mr. Davis's numerous post-conviction applications, the "conviction for aggravated indecent liberties with a child was founded upon consensual intercourse with a 15-year-old girl. The other convictions were founded upon a domestic altercation between Davis and C.S., his common-law wife." Davis v. State, 155 P.3d 744 (Kan. App. 2007) (unpublished). In 1999, the Kansas Court of Appeals affirmed. Starting in 2000, Mr. Davis filed many motions and appeals seeking post-conviction relief, none of which was successful.

Mr. Davis filed the instant § 2254 application in 2012, alleging some ten issues challenging, *inter alia*, the sufficiency of the evidence supporting his convictions, alleging ineffective assistance of counsel, and claiming he was

denied a fair trial in various ways. The district court denied his petition in a thirty-two page memorandum carefully analyzing his claims under the standards provided by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

The district court began by noting that AEDPA "erects a formidable barrier to federal habeas relief." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). It "requires federal courts to give significant deference to state court decisions" on the merits. Lockett v. Trammel, 711 F.3d 1218, 1230 (10th Cir. 2013); see also Hooks v. Workman, 689 F.3d 1148, 1162-63 (10th Cir. 2012) ("This highly deferential standard for evaluating state-court rulings demands state-court decisions be given the benefit of the doubt." (quotation marks omitted)). Moreover, "AEDPA's deferential treatment of state court decisions must be incorporated into our consideration of a habeas petitioner's request for COA." Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004).

Under AEDPA, where a state court addresses the merits of a habeas claim brought by a state prisoner, a federal court may grant habeas relief only if it determines that the state court proceedings resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." 28 U.S.C. § 2254(d). See Harrington v. Richter, 131 S. Ct. 770, 783-84 (2011).

"Clearly established law is determined by the United States Supreme Court, and refers to the Court's holdings, as opposed to the dicta." Lockett, 711 F.3d at 1231 (further quotation omitted). A state court decision is "contrary to" the Supreme Court's clearly established precedent "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." Bell v. Cone, 535 U.S. 685, 694 (2002) (further quotation omitted).

A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct legal rule from Supreme Court case law, but unreasonably applies that rule to the facts. Williams v. Taylor, 529 U.S. 362, 407-08 (2000). Similarly, a state court unreasonably applies federal law when it either unreasonably extends, or refuses to extend, a legal principle from Supreme Court precedent where it should apply. House v. Hatch, 527 F.3d 1010, 1018 (10th Cir. 2008).

When a federal court, on habeas review, examines state criminal convictions, the federal court does not sit as a "super-appellate" court. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect

but whether that determination was unreasonable – a substantially higher threshold." Schiro v. Landrigan, 550 U.S. 465, 473 (2007). In making this assessment, we review the factual findings of the state court for clear error, reviewing only the record that was before the state court. See Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).

Finally, we note, as did the district court, that a writ of habeas corpus may issue only when the petitioner shows "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Richter, 131 S. Ct. at 786. "Thus, even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." Id. "If this standard is difficult to meet – and it is – that is because it was meant to be." Titlow, 134 S. Ct. at 16; see Frost v. Pryor, 749 F.3d 1212, 1222-23 (10th Cir. 2014). Indeed, "AEDPA stops just 'short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.'" Frost, 749 F.3d at 1223 (quoting Richter, 131 S. Ct. at 786).

The district court applied that rigorous standard to the ten issues Mr. Davis brought in his habeas petition. Accordingly, the district court determined as follows, with respect to Mr. Davis's claims:

**(1) Insufficient evidence:**

Mr. Davis first claimed that insufficient evidence supported his convictions for aggravated indecent liberties with a child and aggravated kidnaping. The

district court found this claim procedurally barred because it was not fairly presented to the Kansas Supreme Court and would now be untimely under Kansas's procedural rules. The court determined further that Mr. Davis failed to assert and show either cause for the default and prejudice stemming therefrom, or that a fundamental miscarriage of justice would occur if the issue was not addressed, as he must if he hopes to overcome this procedural default.

**(2) Prosecutorial misconduct:**

Mr. Davis's second claim is that he was denied a fair trial because of prosecutorial misconduct in the form of improper closing argument and other comments to the jury. The district court found most of these claims procedurally defaulted. The court found no demonstration of cause and prejudice or a fundamental miscarriage of justice resulting from application of the default rule. The court did find one such claim of prosecutorial misconduct was properly before the federal habeas court – Mr. Davis's claim that the prosecution improperly shifted the burden of proof by repeatedly asserting during closing argument that Mr. Davis had the power to subpoena witnesses, and by saying that Mr. Davis could have introduced the results of a rape kit performed on the victims. Mr. Davis had raised this claim of prosecutorial misconduct on direct appeal.

The court accordingly applied AEDPA standards of review to the Kansas courts' resolution of this claim. The Kansas Court of Appeals ("KCOA") found

-6-

that the prosecutor's repeated statements that Mr. Davis had subpoena power

"were likely improper." But the KCOA found no prejudice because the jury was

repeatedly instructed by the prosecutor, by defense counsel, and by the court that

the State had to burden to prove Mr. Davis's guilt. With respect to the reference

to the rape kit in closing, the KCOA found that, even if the comments were in

error, Mr. Davis suffered no prejudice and the comments did not rise to the level

of being so gross and flagrant as to deny Mr. Davis a fair trial.

The district court, on habeas review, began by noting that habeas relief is

not warranted for prosecutorial misconduct unless it "so infected the trial with

unfairness as to make the resulting conviction a denial of due process." Donnelly

v. DeChristoforo, 416 U.S. 637, 643 (1974). The court then held:

> Here, the KCOA, in deciding whether the prosecutor's
> statements denied the defendant a fair trial, applied the same test
> required by the United States Supreme Court in Donnelly for a due
> process determination. The KCOA also viewed the prosecutor's
> statements in context, weighed them against the strength of the
> evidence against the defendant, and found no prejudice to the
> Petitioner. Petitioner has thus failed to demonstrate that the KCOA's
> adjudication was contrary to, or an unreasonable application of,
> federal law as determined by the Supreme Court.

Memorandum & Order at 12 (citing 28 U.S.C. § 2254(d)).

**(3) Ineffective assistance of trial counsel:**

Mr. Davis's third argument was that his trial counsel was ineffective in

multiple ways. After determining that many of his claims were procedurally

defaulted and no exception to default was shown, the court considered the ten

claims of ineffectiveness which the court deemed were properly presented for habeas review: that trial counsel was ineffective for (a) not conducting an investigation; (b) improperly allowing a conference on a jury question; (c) waiving Mr. Davis's preliminary hearing; (d) requesting a lesser included offense jury instruction; (e) failing to present Mr. Davis's alleged statement denying guilt; (f) failing to effectively cross-examine Detective Swanson; (g) failing to challenge evidence; (g) failing to present any witnesses; (h) failing to object to the alleged prosecutorial misconduct; and (i) failing to object to certain jury instructions.

The district court then applied AEDPA standards to the state court's holding. As the court noted, the KCOA summarily found that nearly all of these allegations were either rejected in Mr. Davis's direct appeal or should have been raised as trial errors in the direct appeal, or were actually addressed by the state district court in post-conviction proceedings. The court noted that the KCOA separately addressed one claim – that counsel erred in allowing a conference regarding a jury question to occur outside Mr. Davis's presence. The court then quoted the KCOA's analysis in which it found no evidence of ineffective assistance of counsel. The court also excerpted the state district court's factual analysis (which the KCOA reviewed and affirmed), in which the state court carefully reviewed the claims of ineffectiveness and found them contradicted by the record and/or non-prejudicial.

The district court itself, in turn, conducted its own habeas review under AEDPA standards, noting that ineffective assistance of counsel claims must be analyzed under the familiar framework of Strickland v. Washington, 466 U.S. 668 (1984).  The district court acknowledged that its review of Mr. Davis's claim of ineffectiveness is "doubly deferential."  As we recently stated, "[s]urmounting Strickland's high bar is never an easy task.  Even under de novo review, the standard for judging counsel's representation is a most deferential one.  Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult.  The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so."  Howell v. Trammell, 728 F.3d 1202, 1223 (10th Cir. 2013) (quoting Richter, 131 S. Ct. at 787).  The district court concluded: "[i]n denying Petitioner's claims of ineffective assistance of trial counsel, the KCOA evaluated the evidence of record and applied law consistent with the United States Supreme Court's Strickland standard for ineffective counsel.  Its factual findings were objectively reasonable.  Thus no basis for habeas relief has been shown."  Memorandum & Order at 17 (citing Davis v. State, 2007 WL 1109528 (Kan. App. 2007); State v. Gleason, 88 P.3d 218 (Kan. 2004)).

**(4) Ineffective assistance of appellate counsel:**

The district court then considered Mr. Davis's claim that his appellate counsel had been ineffective in several respects.  The court determined that the

claim that appellate counsel was ineffective in failing to raise the issue of the trial counsel's alleged failings was itself procedurally defaulted because it was "never raised in any of the state court proceedings." Id. at 18. The court did, however, address other claims of appellate ineffectiveness, which Mr. Davis had raised in his Kansas post-conviction proceedings. These claims were that appellate counsel failed to challenge the sufficiency of the evidence and that he "failed to brief new issues in his petition for review." Id.

In reviewing the Kansas state court assessment of Mr. Davis's ineffective assistance of appellate counsel claims, the district court observed that the KCOA "did not specifically address the merits" of those claims, "but concluded that the [state] district court's findings of fact and conclusions of law were supported by the record, and that the district court adequately addressed Davis' overall claim of ineffective assistance of counsel." Id. at 19 (citing Davis, 2007 WL 1109528, at *3). "Further, the KCOA was not convinced that, but for counsel's deficiencies, there was a reasonable probability of a different outcome." Id.

The district court then evaluated the ineffective assistance of appellate counsel claim on its merits, concluding that "[c]ounsel cannot be found ineffective for failing to raise meritless claims." Id. at 20 (citing Strickland, 466 U.S. at 691-96). The court summarized its conclusions as follows:

> In denying this claim, the KCOA reviewed the record and applied law consistent with Strickland. Its factual findings were objectively reasonable, as the district court's order shows in more

-10-

detail. Petitioner has not shown that his appellate counsel's performance was objectively unreasonable, or demonstrated a reasonable probability that but for his counsel's alleged errors, he would have prevailed on appeal, as is required. Thus no basis for habeas relief has been shown.

Id. at 21.

**(5) Failure to instruct on lesser included offense:**

Mr. Davis's fifth argument is that the trial court's failure to instruct on the lesser included offense of criminal restraint denied him a fair trial. The court quickly dismissed this claim, stating that it "cannot review the merits of this state law issue. The Supreme Court has never recognized a federal constitutional right to a lesser included offense instruction in non-capital cases." Id. at 21 (citing Beck v. Alabama, 447 U.S. 625, 638 n.14 (1980); Dockins, 374 F.3d at 938).

**(6) Right to be present:**

Mr. Davis next argued that his constitutional right to be present during trial was violated because he was absent when the judge conferred with counsel by telephone about a question asked by the jury during its deliberations, and he was also absent when the judge answered the question. In answering the question, the trial judge referred the jury back to the instructions it had received earlier.

The KCOA found that Mr. Davis was present when the jury instructions were resolved at trial, yet made no objection to them, and that the relevant instructions had come directly from the Pattern Instructions for Kansas. It further found no prejudice by Mr. Davis's absence when the jury question was resolved,

because his counsel was present, and the answer proposed by the court and approved by counsel contained no new jury instructions. Rather, the court merely referred the jury back to instructions previously given (without objection). The state court accordingly found no reversible error.

The district court, on habeas review, considered whether Mr. Davis had a meritorious federal constitutional claim regarding this issue. It noted that "[i]t is a basic premise of our justice system that during a felony prosecution, the defendant has a Fourteenth Amendment privilege to be present under certain circumstances." Memorandum & Order at 23 (citing Kentucky v. Stincer, 482 U.S. 730, 745 (1987)). "Thus, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." Stincer, 482 U.S. at 745.

The district court noted, however, that when the defendant's "presence would be useless, or the benefit but a shadow," due process does not require the defendant's presence at a trial proceeding. Snyder v. Massachusetts, 291 U.S. 97, 106-07 (1934). "In determining whether exclusion of a defendant from a proceeding violated due process, the court considers the proceedings 'in light of the whole record.'" Memorandum & Order at 24 (quoting United States v. Gagnon, 470 U.S. 522, 526-27 (1985)). The district court then discussed relevant Supreme Court and Tenth Circuit cases and concluded that Mr. Davis "has . . . failed to establish that the KCOA's resolution of this issue was contrary to or an

unreasonable application of law clearly established by the Supreme Court." Id. at 25.

**(7) Improper aggravated burglary jury instruction:**

Mr. Davis next argued that the aggravated burglary instruction (given on Count 1 of his conviction) was improper.   This claim was procedurally defaulted because Mr. Davis never challenged that instruction in his state court proceedings.  The district court nevertheless determined that, even had the state courts addressed the claim, Mr. Davis would not have prevailed.

The district court observed that Mr. Davis "must demonstrate that the instructional error 'so infected the entire trial that the resulting conviction violates due process.'" Memorandum & Order at 26 (quoting Henderson v. Kibbe, 431 U.S. 145, 154 (1977)).  The court concluded that Mr. Davis "has not shown any prejudicial error either in the instruction itself, or in the State's characterization of it to the jury." Id. at 27.

**(8) Witness intimidation:**

Mr. Davis's eighth claim was that C.S., the victim of his indecent liberties charge, wanted to recant the testimony she gave to the police, but was intimidated by the state and was persuaded to testify erroneously.

Mr. Davis raised this issue in his state post-conviction motion/petition, and the KCOA affirmed the denial of his petition without specifically addressing the

-13-

issue.  The state district court had concluded that the jury was aware of C.S.'s recanted testimony.

The federal district court accordingly addressed this issue, beginning with the statement that habeas relief "is not warranted unless the prosecutorial misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Memorandum & Order at 28 (quoting Donnelly, 416 U.S. at 643).  After examining relevant case law and the record, the court concluded that:

> the record does not reflect that the prosecutor's conduct toward C.S. was improper.  Petitioner has shown no threats of perjury, use of coercive or intimidating language, or other tactics that could have substantially interfered with C.S.'s free and unhampered decision to testify.  In contrast, the record reveals that C.S. did testify and testified freely, as evidenced by her contradicting in large part the prior statements she had given to police.  Under these circumstances, no basis for habeas relief has been shown.

Id. at 29-30.

**(9) Denial of Mr. Davis's Kan. St. Ann. § 60-1507 motion:**

Mr. Davis next claimed that the state district court erred in ruling on his state post-conviction motion because it adopted the state's response to his § 60-1507 motion, rather than independently analyzing the issues and drafting its own order.  The federal district court resolved this issue as follows:

> Petitioner has not shown that he has a constitutional right that the district court may have violated by the manner in which it reported its decision in his post-conviction proceeding.  While habeas relief is available to address defects in a criminal defendant's

conviction and sentence, alleged defects in a collateral proceeding do not state a basis for habeas relief.

Id. at 30 (citing United States v. Dago, 441 F.3d 1238, 1248 (10th Cir. 2006); Sellers v. Ward, 135 F.3d 1333, 1339 (10th Cir. 1998)).

**(10) Fraud on the court:**

Mr. Davis's tenth and final argument before the district court was that the district court and his state habeas counsel had conspired to commit fraud on the court. This argument is similar to the issue just discussed, in that Mr. Davis challenges the manner in which the state district court resolved his § 60-1507 motion, claiming that the judge did not review the record in the case. As the federal district court noted, this amounts to an attack on the integrity of the state habeas proceeding. But, as the court further stated, alleged defects in a collateral proceeding do not state a basis for habeas relief, inasmuch as federal habeas courts do not address alleged errors of state law. Estelle, 502 U.S. at 67-68.

The federal district court accordingly denied Mr. Davis's habeas petition, after concluding that there was no need for an evidentiary hearing. The court also denied Mr. Davis a COA, finding that he has not met the standard for issuance of a COA "as to any issue squarely presented in this case." Memorandum & Order at 32. Mr. Davis now seeks a COA from our court.

## DISCUSSION

Before Mr. Davis can challenge the district court's denial of his habeas petition, he must first obtain a COA. We will only issue a COA upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(1)(A) & (2). To meet that standard, Mr. Davis must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000). And when a district court denies a petition on procedural grounds, a COA may issue only if the prisoner additionally shows that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

Because AEDPA standards govern the merits of Mr. Davis's habeas petition, we must consider those standards in determining his entitlement to a COA. Thus, to grant Mr. Davis a COA, we must conclude that reasonable jurists could debate the district court's decision that he is not entitled to habeas corpus relief under the standards set forth in AEDPA. Dockins, 374 F.3d at 937.

As the above analysis and discussion clearly demonstrates, the district court carefully examined each of Mr. Davis's claims under applicable AEDPA standards. We have no doubt that reasonable jurists would find that analysis beyond reproach and eminently reasonable and correct. We accordingly agree

-16-

with the district court that Mr. Davis has not met the standards for issuance of a COA.

For the foregoing reasons, we DENY a COA and DISMISS this matter. We also DENY Mr. Davis's request to proceed on appeal *in forma pauperis* ("ifp") and remind Mr. Davis that all filing fees are due in full.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge